## COLEY *against* COLEY and others.

The plaintiff being the uncle and step-father of the defendants, who resided in his family, executed and delivered to them, without any valuable considera-tion, a quit-claim deed of his real estate, containing the following clause immediately after the description of the premises : "reserving to myself the use and improvement of said property, during my natural life ; also to dispose of any part thereof, should it be necessary for my support." The deed was executed by the plaintiff, under a belief that such reservation was legal and effectual to enable him to sell such part of the property as should be necessary for his support. On a bill in chancery to have this convey-ance set aside, on the ground of a mistake of the plaintiff as to its legal effect, without shewing that he needed the avails of the property, or any part of it, for his support, it was held, that until the exigency contemplated by the res-ervation had happened, the application for relief was premature ; and there-fore, the bill was dismissed.

*Qu.* Whether a reservation, in a voluntary conveyance in fee-simple, of the right of the grantor, during his natural life, to dispose of any part of the property conveyed, be void and inoperative, as repugnant to the terms and general intent of the conveyance ?

*Qu.* Whether the mistake of a party as to the legal effect of an instrument execu-ted by him, is, of itself, a ground of relief in equity against such instrument ?

In this state, a reservation in a deed of land, of the use and improvement of the property conveyed, during the grantor's life, is valid and effectual.

THIS was a bill in chancery, for a reconveyance of cer-tain parcels of real estate, now held by the defendants, un-der a deed executed by the plaintiff.

The bill stated, that on the 17th of *December* 1845, the plaintiff, being the owner and in possession of the estate in question, was importuned, by the defendants, to execute to them a conveyance of such estate, whereby it would pass to them, upon his decease ; that in order to induce the plain-tiff to make such conveyance, they, together and severally, falsely and fraudulently, represented to him, that *Samuel Coley,* a brother of his, would sue him, and get all said property away from him ; that the defendants made divers other false and fraudulent representations, by means of which the plaintiff was induced to turn out to them all his personal property, consisting of furniture, grain, stock, &c. ; that on the 19th of said *December, Levi Coley,* one of the defend-ants, came to the plaintiff's house, and took him before his father-in-law, *John Gray,* Esq., to have him execute to the defendants, a will, or other conveyance of his property, to

take effect after his death; that the plaintiff was informed, by said *Gray*, and believed, that such a conveyance could be made, by deed; that he thereupon consented to execute such a deed, for that purpose, to the defendants; that a deed was thereupon drawn, by said *Gray*, and duly executed by the plaintiff, of which the following is in part a copy: " That I, *Gilbert Coley* of *Westport*, &c. in consideration of one thousand dollars, received to my full satisfaction of *Levi Coley, Loyd Coley* and *Mary French* of said *Westport*, do remise, release and forever quit-claim unto the said *Levi Coley*, &c., and unto their heirs and assigns forever, all such right, title, interest, claim and demand whatsoever, which I, the said releasor, have, or ought to have, in or to several pieces of land, [describing the property in controversy,] reserving to myself the use and improvement of said property, during my natural life ; also to dispose of any part thereof, should it be necessary for my support : *To have and to hold* the premises, with all their appurtenances, unto the said releasees, their heirs and assigns forever :" That although said deed purported to be in consideration of the sum of 1000 dollars, it was in fact without valuable consideration of any kind whatever ; that the plaintiff executed it, with the belief that the clause authorizing him to sell said property, or any part thereof, was legal and effectual, and that the effect of the instrument would be the same in law as a will ; that since the execution of it, he has learned, to his great surprise, that the grantees claim, that said clause is wholly inoperative and void, and that they deny all right of the plaintiff to sell or dispose of any part of said property, under any circumstances ; and that, if the use of said property is insufficient to support him, he must come upon the town.

The bill also averred, that said deed was obtained from him, by misrepresentation and conspiracy ; that it was intended to be another and different instrument ; and that by mistake of the drafts-man and the plaintiff, it is not in accordance with the intention and agreement of the parties.

The bill farther averred, that the income of said property is now insufficient for the plaintiff's support ; and should he live, it will be necessary that it should be sold and invested in more productive property ; but that he is wholly pre-

*Fairfield,*
July, 1848.

Coley
*v.*
Coley.

cluded, by the mistake in said deed, from disposing of any part of said property, for any purpose.

On the hearing before the superior court in *Fairfield* county, *April* adjourned term, 1847, the court found the following facts.

The plaintiff is the uncle of the three defendants, *Levi Coley*, *Loyd Coley* and *Mary French*, and the other defendant is the husband of said *Mary ;* the three first-named defendants, being the only children of a brother of the plaintiff's, now deceased. The plaintiff, after the death of his brother, married his widow, the mother of said children, and thus became their father-in-law. During the life of their mother, said children lived with her, as a part of the plaintiff's family ; and after her death, they remained a part of his family, until said *Levi* and *Loyd* became of suitable age to be apprentices, when they left such family for the purpose of learning trades. *Mary* continued to reside in his family until her marriage, having charge of his domestic affairs, and being treated by him as a daughter.

The plaintiff, having no children of his own, and having an affection for the defendants, as their uncle and step-father, expressed, at times, his intention to leave them his property by will, and did, in fact, execute a will in their favour ; but on the marriage of *Mary*, he entered into an arrangement with his brother, *Samuel Coley*, that he and his wife should reside in the plaintiff's house, and have the use of his property, during his life, and he, at the same time, should live with his brother, and thus derive from said property his support.

At this time, the plaintiff made another will, making his brother *Samuel* the principal object of his bounty, by devising to him the property mentioned in the bill. After this arrangement, and while *Samuel Coley* was so residing with the plaintiff, the latter became dissatisfied with his brother, and destroyed the will in his favour, and executed the deed mentioned in the bill. A few days previous to the execution and delivery of that deed, the plaintiff applied to the magistrate who drew it, and enquired of him, if he could not make a deed of his property to said *Levi* and *Loyd*, and take from them a lease of it, for the period of his natural life. He was informed, by the magistrate, that as said *Loyd* was a minor, he could not legally execute a lease of the

property back to him, without the consent of a legal guardian; but that a deed to them, with a reservation of the use of the property during his life, would be legal, and would accomplish the object he had in view. The plaintiff therefore directed such a deed to be drawn. During the drawing of the first deed, the plaintiff expressed a doubt whether the income or use of the property would be sufficient for his support; and enquired of the magistrate, whether he could not also reserve to himself the power to sell, in the event of the use being insufficient for that purpose. The magistrate stated to him, that he doubted whether such a reservation would be legal, but that he thought it might answer. The plaintiff, believing that such a reservation would be legal and effectual to authorize him to sell such part of the property as should be necessary for his support, expressed his determination to risk the giving of the deed, with such reservation contained in it; and thereupon he executed to said *Levi* and *Loyd* a deed of the same tenor as that mentioned in the bill, and then directed, that the first deed should remain in the hands of the magistrate until he should recall it, or direct it to be delivered. On the day of the date of the deed mentioned in the bill, the plaintiff informed the magistrate, that he should not deliver the first deed, and directed him to draw another deed, like the first in all respects, except that it should include *Mary French* [one of the defendants,] as one of the grantees—she to take an equal interest with each of her brothers. The last-mentioned deed was thereupon drawn, and was executed and delivered, by the plaintiff, to the defendants, under the same impression and belief of all parties to it, as they had in regard to the first deed, that it would be legal, and that the reservation contained therein would empower the plaintiff to sell so much of the property mentioned therein as should be necessary for his comfortable support.

The plaintiff is of about the age of 68 years. The annual value of the property mentioned in said deed, is 70 dollars; and the plaintiff has no other means of support than the income arising from this property and his own labour. While he remains in his ordinary health, said income and such reasonable labour as he has been accustomed to perform, will be sufficient for his present support; but in case

of his sickness or inability to labour, it will be wholly insufficient for that purpose.   No valuable consideration was ever paid, by the grantees, for the property mentioned in said deeds ; but they were made, and the last-mentioned deed was delivered, in consideration of the love and affection of the plaintiff for the defendants.

The court also found, that the other facts stated in the bill, and not inconsistent with the facts here stated, are true, excepting only the importunity, falsehood, fraud, combination, and conspiracy of the defendants, charged in the bill ; which were not found.

The case was reserved for the advice of this court as to what decree should be passed.

*Butler* and *Carter*, for the plaintiff, contended, 1. That if the case disclosed a mere mistake of law, the plaintiff was entitled to relief.   The maxim *ignorantia legis neminem excusat,* is applied in equity, because there is no saying to what extent the excuse of ignorance may be carried, and because there are difficulties respecting the proof.   1 *Sto. Eq.* 123. *ch.* 5. *s.* 111.   But a distinction has been taken between *ignorance* of the law and a *mistake* in the law. *Champlin* v. *Laytin,* 6 *Paige,* 189.   S. C. on appeal, 18 *Wend.* 407. 423, 4.   There is great good sense in the distinction.   Here the parties have done a *different thing* from what they *intended to do,* under a mutual *mistake* as to the legal effect of the instrument by which they undertook to have it done.   If the facts in *Hunt* v. *Rousmaniere,* 1 *Pet.* 1. 13., had been like those in this case, the decision would have been the other way.   There, the security was precisely what the parties *intended it to be.*   1 *Sto. Eq.* 128. *s.* 115.

2. That here the mistake was made by the draftsman ; and a court of equity will give the same effect to this instrument, as if the draftsman had used appropriate language to express the meaning of all concerned.   1 *Sto. Eq.* 180. *c.* 5. *s.* 166.

3. That the mistake was attended by such special circumstances of surprise, undue influence and improvidence, that the plaintiff is entitled to relief.   He is an old man ; his mind is enfeebled ; he has made a will in favour of these grantees, which was destroyed ; and another in favour of his

brother, which was also destroyed. He is importuned, by these grantees, to give a deed; and is carried, by one of them, to his [such grantee's] father-in-law, having previously given to that grantee his little personalty. While the deed is being drawn, he thinks suddenly of the necessity of reserving the right to sell; and is advised that it can be done in that deed. If he had not been thus *weak-minded, importuned* and *advised*, he would not have executed the instrument. 1 *Sto. Eq.* 132, 3. *c.* 5. *s.* 120. and notes.

4. That this is a case of mistake, connected with *imposition*. Although the superior court did not find actual *fraud*, in the defendants, this court will look at the facts which were found, and may infer fraud therefrom—*i. e.*, what a court of equity deems fraud. *Callender* v. *Colegrove,* 17 *Conn. R.* 1. 27.

5. That it is a case of mistake in a *voluntary* conveyance— a gift which is improvident and unadvised. The plaintiff gives away, without consideration and by mistake, that which is *necessary for his support*, and which the grantees cannot conscientiously retain. 1 *Sto. Eq.* 149. *c.* 5. *s.* 134.

6. That the proper relief is, to set aside the deed. No other relief is adequate; and this may be granted, without interfering with the equitable rights of others. 2 *Sto. Eq.* 102, 3. *c.* 18. *s.* 793. *a.*

*Hawley,* (with whom was *Swift,*) (*a*) after remarking, that all the allegations in the bill of importunity, falsehood, fraud, combination and conspiracy, on which the plaintiff principally relied, were negatived, by the finding, contended, 1. That if the plaintiff was under a mistake even, when he executed the deed, it was a mere mistake of *law.* The clause reserving the power to sell was inserted, at his suggestion, and in conformity with his instructions. He was advised that it was of doubtful validity. He said he would risk it. The magistrate acted with the utmost fairness and frankness. The plaintiff, with the whole case before him, acted upon his own determination.

2. That a misapprehension of the legal effect of an in-

(*a*) Mr. *S.* was prevented, by indisposition, from taking part in the argument.

*Fairfield,*
July, 1848.

Coley
*v.*
Coley.

strument, as a general rule, lays no foundation for relief in chancery. 1 *Sto. Eq.* 121. & seq. *c.* 5. *s.* 111. 113. 114. 115. *Hunt* v. *Rousmanier,* 8 *Wheat.* 211, 12. S. C. 1 *Pet.* 1. 15, 16. *Shotwell* v. *Murray,* 1 *Johns. Ch. R.* 512. 515, 16. *Lyon* & al. v. *Richmond* & al., 2 *Johns. Ch. R.* 51. 60. *Storrs* & al. v. *Barker,* 6 *Johns. Ch. R.* 166. 169. *United States Bank* v. *Daniel* & al., 12 *Pet.* 32. 55, 6. *Wheaton* v. *Wheaton,* 9 *Conn. R.* 96. *The Chestnut Hill Reservoir Co.* v. *Chase,* 14 *Conn. R.* 124. 133.

3. That if chancery could relieve, on the ground of a mere mistake of law, yet the *intention* of the parties must prevail; and here it was the intention of the plaintiff, that the deed should take effect—with the reservation, if it could legally—if not, then without the reservation. He knew what the instrument was, and intended it should take effect, as far as it legally could.

4. That if the plaintiff is entitled to any relief, which a court of equity can administer, it will not be by setting aside the deed; for it was certainly intended, that the grantees should have all the land that the plaintiff should not *need for his support.* The decree, therefore, will be limited to the accomplishment of this object.

HINMAN, J. The object of the plaintiff's bill is, to compel a reconveyance to him, of certain premises, which he had previously deeded to the defendants. The ground of the application, principally relied upon in the bill, was, the combination and fraud of the defendants, in procuring their deed. But as the plaintiff is deprived of this ground of relief, by the finding that there was no such fraud or combination as is alleged, the plaintiff now relies upon the mutual mistake of the parties, and of the magistrate employed to draw up the deed, as to the effect of a reservation contained in it.

The plaintiff is the uncle and step-father of the defendants; and executed the deed in consideration of his affection for them, as his relations. The statement, therefore, in the instrument, that it was given in consideration of a thousand dollars, is incorrect, as is shown by the finding. The reservation follows immediately after the description of the property, and is in these words: " Reserving to myself the use and improvement of said property, during my natural

*Fairfield,*
July, 1848.

Coley
*v.*
Coley

life ; also to dispose of any part thereof, should it be necessary for my support." It is not denied, that, by our practice, the reservation of the use and improvement of the property, during the plaintiff's life, is valid ; but, it is claimed, that the power to dispose of any part of it, should it be necessary for the plaintiff's support, is repugnant to the express terms of the conveyance, and contrary to its general intent, and, therefore, void. If the plaintiff is wrong in this claim, it obviously puts an end to his case, by showing that there was no mistake, either in fact, or in law. But nothing has been said, by the defendant's counsel, in answer to this part of the plaintiff's claim ; and as we are satisfied, on other grounds, that no relief can, at present, be granted, we have considered it unnecessary to examine this question.

It is insisted, that the only proper relief, provided the plaintiff is entitled to any relief, is, to have his deed set aside, and the property reconveyed to him. We think this claim cannot be sustained. If the power to sell was valid, the instrument would be precisely what the parties intended, and there would be no occasion to ask for relief; and wholly to set aside the deed, because the parties happened to be mistaken in regard to the legal effect of this clause, would be placing them in a very different situation from what was contemplated, by any one. It is said, this ought to be done, because the deed was without any valuable consideration, and was voluntary. This, in certain cases, would be an answer to any claim, on the part of the voluntary grantees, if they were compelled to come into court, to have a voluntary conveyance made effectual, in consequence of some such mistake as is here claimed. But we do not think it entitled to any weight, where a grantor is asking to be relieved against the consequences of his voluntary deed.

As, then, the plaintiff has no right, under any circumstances, to have his deed set aside, and himself placed in a better condition than he would be in, if the mistake had not existed, but his only right must be, to have the deed made effectual according to the intent ; it seems clear, that he ought first to show, as a ground for relief, that the event has happened, upon which alone he intended to reserve the power to sell. He intended to reserve this power, only in case the avails should be wanted for his support. But it is not al-

*Fairfield,*
July, 1848.

Coley
*v.*
Coley.

leged in the bill, nor is it found as a fact, that he needs the avails of this property, or any part of it, for his support. The inference, rather, is, that he does not now need them. He is supporting himself, as he has done through life, by his labour, and the use of this property. It does not, therefore, appear, that he will ever require the property to be sold for his support; or, if he should, that the defendants would object to, or refuse to perfect, a sale made for this purpose. Indeed, the bill was not framed with a view to any such relief. It asks only to have the deed wholly set aside, and the property reconveyed to the plaintiff. It has been pursued, with that object alone in view. We think, therefore, that until the exigency which was contemplated has happened, it is premature to ask for any relief.

It is apparent, from this view of the subject, that the question, whether this mistake is of a character to authorize the court to correct it, is not involved in the decision. That is a question of some difficulty; and we do not feel inclined unnecessarily to enter into it. We are satisfied the plaintiff's bill should be dismissed, on the ground that the exigency has not yet transpired upon which he intended to reserve the power to sell; and so we advise the superior court.

In this opinion the other Judges concurred.

Bill dismissed.